UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKIVA INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SENTINEL INSURANCE COMPANY, LTD. d/b/a THE HARTFORD, <br><br> Defendant. | Civil Action No. 16-CV-4037 <br><br> COMPLAINT AND JURY DEMAND <br><br> ECF CASE |

Plaintiff, Skiva International, Inc. (hereinafter "Skiva" or "Plaintiff"), by its attorneys, STERN & SCHURIN, LLP, as and for their Complaint against Defendant, Sentinel Insurance Company, Ltd. d/b/a The Hartford (hereinafter "The Hartford" or "Defendant"), alleges as follows:

## NATURE OF ACTION

1. This is an action for breaches of an insurance contract between Plaintiff and The Hartford.

2. By this action, Plaintiff seeks compensation for the defense and settlement costs it has incurred in connection with claims asserted against Plaintiff by the following parties: Royal Printex, Inc. ("Royal") in a matter entitled *Royal Printex, Inc. v. Citi Trends, Inc.; Skiva International, Inc. et al.* 15-CV-00932; Unicolors, Inc. ("Unicolors") in a matter entitled *Unicolors, Inc. v. Skiva International, Inc. et al.* 15-CV-05876-E; Minx International, Inc. ("Minx") in a matter entitled *Minx International, Inc. d/b/a Damask Fabrics v. The Wet Seal,*

1

*Inc.; The Wet Seal, LLC; Skiva International, Inc. et al.* 15-CV-4566-SVW-JC; and Standard Fabrics International, Inc. ("Standard") in a matter entitled *Standard Fabrics International, Inc. v. Skiva International, Inc. et al.* 15-CV-05456-JAK (MRWx) (individually, the "Underlying Action") (collectively, the "Underlying Actions").

## JURISDICTION AND VENUE

3. This action seeks damages by reason of Defendant's prior and ongoing failure to compensate Plaintiff for the costs it has incurred in the defense and settlement of the aforementioned copyright infringement actions levied against Plaintiff.

4. This Court has general personal jurisdiction over The Hartford because The Hartford conducts extensive business in the State of New York.

5. This Court possesses specific personal jurisdiction over The Hartford because the policy was entered into in New York and the transactions complained of herein between Skiva and The Hartford took place within the State of New York.

6. This Court has subject matter jurisdiction in this action through diversity of the parties under 28 U.S.C. § 1332. The sum in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because The Hartford resides in this judicial district.

## PARTIES

8. Skiva International, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business located at 1407 Broadway, Suite 503, New York, New York 10018.

9. Skiva is a named insured on an insurance policy issued by The Hartford that is the

subject of this Complaint.

10. Skiva conducts its business in the retail and wholesale apparel industry by selling, marketing, advertising, promoting and/or distributing women's and child's clothing apparel.

11. The Hartford is a Connecticut corporation, with a principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.

12. Upon information and belief, The Hartford is a company engaged in providing commercial, property, and liability insurance.

13. Upon information and belief, The Hartford sells its insurance products and services in this judicial district and throughout the United States.

## FACTS COMMON TO ALL CLAIMS: THE INSURANCE POLICY

14. In 2012, Skiva secured and maintained a policy of commercial general liability insurance ("CGL Policy") (the "Policy") from The Hartford.

15. The Hartford issued the CGL Policy, identified as Policy No. 12 UUN JY9436, to Skiva for a policy period from October 31, 2012, through October 31, 2013.

16. The CGL Policy was subsequently renewed for the 2013-2014 and 2014-2015 policy periods.

17. Based on the renewals by Skiva, the CGL Policy covers occurrences arising between October 31, 2012 and October 31, 2015.

18. The policy premium on the CGL Policy issued by The Hartford was a substantial sum of money, which was paid by Skiva.

19. Skiva has met every condition required by the CGL Policy. As a result, said CGL Policy remains in full force and effect with respect to Skiva.

20. The CGL Policy issued by The Hartford includes coverage for "Personal and Advertising Injury" among its terms.

21. Pursuant to the terms of the CGL Policy issued by The Hartford, the definition of "Personal and Advertising Injury" includes, among other definitions,

> …injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement…"

22. The CGL Policy defines "Advertisement" as

> …the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:
>
> a. (1) Radio;
>    (2) Television;
>    (3) Billboard;
>    (4) Magazine;
>    (5) Newspaper; or
>
> b. Any other publication that is given widespread public distribution.
>
> However, "advertisement" does not include:
>
> a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or
>
> b. An interactive conversation between or among persons through a computer network.

23. The CGL Policy states that the following exclusion to coverage applies to bar coverage under the Policy:

> i. Infringement of Intellectual Property Rights
>
> (1)    "Personal and advertising injury" arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

4

    (2)    Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

    24.    However, the CGL Policy also provides that the above-mentioned exclusion is inapplicable

> …if the only allegation in the claim or 'suit' involving any intellectual property right is limited to:
>
> (1)    Infringement, in your "advertisement" of:
>     (a)    Copyright;
>     (b)    Slogan; or
>     (c)    Title of any literary or artistic work…

## THE CLAIMS AND LITIGATIONS THAT GIVE RISE TO THE HARTFORD'S DUTY TO DEFEND

**I.    Royal Printex, Inc. v. Citi Trends, Inc. et al. 15-cv-00932 (C.D. Cal.)**

    25.    On February 9, 2015, Royal commenced the Royal Action by filing a Complaint against Skiva.

    26.    All of the claims alleged by Royal against Skiva in the Royal Action are based on factual allegations that pertain to Skiva's advertising and sale of products in violation of Royal's rights in U.S. Copyright Registration VAu 1-131-890 (ROYAL DESIGN 54).

    27.    On May 20, 2015, Skiva tendered the Royal Action to its insurance broker, The Hartford, by emailing notice thereof.  Thus, Skiva provided The Hartford with timely notice of the suit initiated by Royal.

    28.    The Hartford initially agreed via telephonic conversation to cover the defense costs for the Plaintiff in the Royal Action.

29. Following The Hartford initially agreeing to cover Skiva's costs in defending the Royal Action, The Hartford engaged in an email exchange with Skiva's legal representation over a period of several months focusing on The Hartford finalizing an official coverage letter which would provide coverage to Skiva for its defense costs under a reservation of rights.

30. After this email exchange, The Hartford suddenly decided to no longer cover Skiva in the Royal Action and denied the claim through a denial letter (the "Royal Action Denial Letter") on the grounds that the Royal Action fails to constitute "personal and advertising injury." Attached hereto as **Exhibit A** is a copy of the Royal Action Denial Letter.

31. The Hartford's conclusion that the factual allegations of the Royal Action do not constitute "personal and advertising injury" is contrary to well-settled law.

32. The exclusion applied by The Hartford to bar coverage to Skiva is limited, and includes exceptions where the exclusion does not apply. In particular, the exclusionary language does not apply when the only allegation in the claim or "suit" involving any intellectual property right is limited to "(1) Infringement, in your 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work."

33. The allegations asserted throughout the Royal Action all relate to Skiva's alleged unauthorized use of ROYAL DESIGN 54 in its advertising, marketing, distribution and sale of clothing products on the internet and elsewhere.

34. On June 15, 2015, Royal and the Defendants filed a Joint Report Pursuant to FRCP Rule 26(f) and Local Rule 26-1 [the "Royal Rule 26(f) Report"].

35. In this case, the allegations contained in the Royal Rule 26(f) Report relate to Skiva's alleged unauthorized use of ROYAL DESIGN 54 in its advertising, marketing,

distribution, and sale of clothing products on the internet and elsewhere. A copy of the Royal Rule 26(f) Report is attached hereto as **Exhibit B**.

36. Specifically, Paragraphs A lines 8-13, D-1 lines 9-12, D-2 lines 16-21, and E lines 26-28 of the Royal Rule 26(f) Report allege the following:

> A) …Plaintiff alleges that Defendants…SKIVA INTERNATIONAL, INC… have, without proper authorization, copied, purchased, **marketed**, and/or sold among each other and to the general public as customers clothes bearing a design owned and registered by Plaintiff…
>
> D-1) …the alleged harm Plaintiff suffered as a result of Defendants' alleged wrongful conduct; the alleged independent creation of the allegedly infringing design, **advertisement**, sale, offering for sale, and purchase of the allegedly infringing garments.
>
> D-2) …Plaintiff will conduct further discovery and investigation as to additional documentary evidence and witnesses showing how much Defendants produced, **marketed**, and sold the infringing design…
>
> E) Plaintiff cannot state a specific damage amount at this time as it has not yet produced, **marketed**, and sold by Defendants, and the amount of profits and costs that were incurred.

37. The Hartford was provided with this evidence yet still refused to reconsider its denial of defense and indemnity.

38. Without the support of its insurance carrier, Skiva was forced to settle this case.

39. On December 7, 2015, Royal and Skiva entered into a Settlement Agreement and General Release of Claims (the "Royal Settlement Agreement") which resulted in Skiva tendering a reasonable monetary amount to Royal as consideration for Royal releasing its claims against Skiva for copyright infringement in Skiva's advertising and marketing of clothing products.

40. In addition, the Royal Settlement Agreement also includes allegations related to Skiva's alleged unauthorized use of ROYAL DESIGN 54 in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

41. Due to confidentiality provisions, the contents of the Royal Settlement Agreement may not be disclosed prior to conducting discovery in the matter at hand.

42. With respect to a demand for monetary damages, the Royal Settlement Agreement speaks directly to the monetary damages suffered by Royal due to Skiva's unauthorized copyright infringement in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

43. Thus, the Royal Settlement Agreement specifically mentions a monetary sum tendered by Skiva to Royal sustained as a consequence of Skiva's alleged infringing activities.

44. Due to the aforementioned evidence, there is no dispute that the factual allegations asserted against Skiva relate to the alleged unauthorized use of ROYAL DESIGN 54 in Skiva's advertising and marketing.

**II.     Unicolors, Inc. v. Skiva International, Inc. et al. 15-cv-05876-E (C.D. Cal.)**

45. On August 5, 2015, Unicolors commenced the Unicolors Action by filing a Complaint against Skiva.

46. All of the claims alleged by Unicolors against Skiva in the Unicolors Action are based on factual allegations that pertain to Skiva's advertising and sale of products in violation of Rainbow's rights in U.S. Copyright Registration VA 1-682-481 (DESIGN GS435).

47. On May 20, 2015, Skiva tendered the Unicolors Action to its insurance broker, The Hartford, by emailing a notice thereof. Thus, Skiva provided The Hartford with timely notice of the suit initiated by Unicolors.

48.     On October 9, 2015, The Hartford responded with a denial letter (the "Unicolors Action Denial Letter").  Attached hereto as **Exhibit C** is a copy of the Unicolors Action Denial Letter.

49.     The Hartford's conclusion that the factual allegations of the Unicolors Action do not constitute "personal and advertising injury" is contrary to well-settled law.

50.     The exclusion applied by The Hartford to bar coverage to Skiva "is limited, and includes exceptions where the exclusion does not apply.  In particular, the exclusionary language does not apply when the only allegation in the claim or "suit" involving any intellectual property right is limited to "(1) Infringement, in your 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work."

51.     The allegations asserted throughout the Unicolors Action all relate to Skiva's alleged unauthorized use of DESIGN GS435 in its advertising, marketing, distribution and sale of clothing products on the internet and elsewhere.

52.     Without the support of its insurance carrier, Skiva was forced to settle the Unicolors case.  On November 7, 2015, Unicolors and Skiva entered into a Settlement Agreement and General Release of Claims (the "Unicolors Settlement Agreement") which resulted in Skiva tendering a reasonable monetary amount to Unicolors as consideration for Unicolors releasing its claims against Skiva for copyright infringement in Skiva's advertising and marketing of clothing products.

53.     In addition, the Unicolors Settlement Agreement also includes allegations related to Skiva's alleged unauthorized use of DESIGN GS435 in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

54. Due to confidentiality provisions, the contents of the Unicolors Settlement Agreement may not be disclosed prior to conduct discovery in the matter at hand.

55. With respect to a demand for monetary damages, the Unicolors Settlement Agreement speaks directly to the monetary damages suffered by Unicolors due to Skiva's unauthorized copyright infringement in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

56. Thus, the Unicolors Settlement Agreement specifically mentions a monetary sum tendered by Skiva to Unicolors sustained as a consequence of Skiva's alleged infringing activities.

57. Due to the aforementioned evidence, there is no dispute that the factual allegations asserted against Skiva relate to the alleged unauthorized use of DESIGN GS435 in Skiva's advertising and marketing.

**III. Minx International, Inc. v. The Wet Seal, Inc. et al. 15-cv-4566-SVW-JC (C.D. Cal.)**

58. On July 6, 2015, Minx commenced the Minx Action by filing a Complaint against Skiva.

59. All of the claims alleged by Minx against Skiva in the Minx Action are based on factual allegations that pertain to Skiva's advertising and sale of products in violation of Minx's rights in U.S. Copyright Registration VA 1-773-401 [110308(80225)].

60. On June 30, 2015, Skiva tendered the Minx Action to its insurance broker, The Hartford, by emailing notice thereof. Thus, Skiva provided The Hartford with timely notice of the suit initiated by Minx.

61. On July 27, 2015, The Hartford responded with a denial letter (the "Minx Action Denial Letter"). Attached hereto as **Exhibit D** is a copy of the Minx Action Denial Letter.

62. The Hartford's conclusion that the factual allegations of the Minx Action do not constitute "personal and advertising injury" is contrary to well-settled law.

63. The exclusion applied by The Hartford to bar coverage to Skiva is limited, and includes exceptions where the exclusion does not apply. In particular, the exclusionary language does not apply when the only allegation in the claim or "suit" involving any intellectual property right is limited to "(1) Infringement, in your 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work."

64. The allegations asserted throughout the Minx Action all relate to Skiva's alleged unauthorized use of 110308(80225) in its advertising, marketing, distribution and sale of clothing products on the internet and elsewhere.

65. On February 3, 2016, Minx and the Defendants filed a Joint Report Pursuant to FRCP Rule 26(f) and Local Rule 26-1 [the "Minx Rule 26(f) Report"].

66. In this case, the allegations contained in the Minx Rule 26(f) Report relate to Skiva's alleged unauthorized use of 110308(80225) in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere. A copy of the Minx Rule 26(f) Report is attached hereto as **Exhibit E**.

67. Specifically, Section 1 lines 14-18 and Section 3 of the Minx Rule 26(f) Report allege the following:

> 1) Plaintiff has alleged that Defendants have engaged in infringing activity by creating, importing, manufacturing, distributing, purchasing, selling, offering for sale, **advertising**, **marketing**, creating derivative works, and/or transferring apparel and fabric which violates Plaintiff's copyrights in its proprietary textile design…
>
> 3) The parties anticipate written discovery requests, including…the **advertisement**, sale, offering for sale, and purchase of the infringing garment.

68. Without the support of its insurance carrier, Skiva was forced to settle the Minx

11

case. On April 6, 2016, Minx and Skiva entered into a Settlement Agreement and General Release of Claims (the "Minx Settlement Agreement") which resulted in Skiva tendering a reasonable monetary amount to Minx as consideration for Unicolors releasing its claims against Skiva for copyright infringement in Skiva's advertising and marketing of clothing products.

69. In addition, the Minx Settlement Agreement also includes allegations related to Skiva's alleged unauthorized use of 110308(80225) in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

70. Due to confidentiality provisions, the contents of the Minx Settlement Agreement may not be disclosed prior to conduct discovery in the matter at hand.

71. With respect to a demand for monetary damages, the Minx Settlement Agreement speaks directly to the monetary damages suffered by Minx due to Skiva's unauthorized infringement in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

72. Thus, the Minx Settlement Agreement specifically mentions a monetary sum tendered by Skiva to Minx sustained as a consequence of Skiva's alleged infringing activities.

73. On February 1, 2016, Minx filed "Plaintiff's Request for Production of Documents and Things (Set One)" (the "Minx Production Request").

74. In this case, the Minx Production Request specifically relates to Skiva's alleged unauthorized use of 110308(80225) in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere. A copy of the Minx Production Request is attached hereto as **Exhibit F**.

75. In particular, request No. 9 of the Production Request demands:

> All DOCUMENTS which constitute, show, or reflect YOUR **advertising**, promotion or **marketing** of the SUBJECT PRODUCT, including all catalogs,

**advertisements**, price sheets, flyers and brochures depicting or referring to SUBJECT PRODUCT within the last five (5) years.

76. Due to the aforementioned evidence, there is no dispute that the factual allegations asserted against Skiva relate to the alleged unauthorized use of 110308(80225) in Skiva's advertising and marketing.

### IV. Standard Fabrics International, Inc. v. Skiva International, Inc. et al. 15-CV-05456-JAK (MRWx) (C.D. Cal.)

77. On May 8, 2015, Standard commenced the Standard Action by filing a Complaint against Skiva.

78. All of the claims alleged by Standard against Skiva in the Standard Action are based on factual allegations that pertain to Skiva's advertising and sale of products in violation of Standard's rights in U.S. Copyright Registration VA 1-881-173 (DESIGN 7766).

79. On November 29, 2015, Skiva tendered the Standard Action to its insurance broker, The Hartford, by emailing notice thereof.  Thus, Skiva provided The Hartford with timely notice of the suit initiated by Standard.

80. On December 16, 2015, The Hartford responded with a denial letter (the "Standard Action Denial Letter").  Attached hereto as **Exhibit G** is a copy of the Standard Action Denial Letter.

81. The Hartford's conclusion that the factual allegations of the Standard Action do not constitute "personal and advertising injury" is contrary to well-settled law.

82. The exclusion applied by The Hartford to bar coverage to Skiva "is limited, and includes exceptions where the exclusion does not apply.  In particular, the exclusionary language does not apply when the only allegation in the claim or "suit" involving any intellectual property

right is limited to "(1) Infringement, in your 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work."

83. The allegations asserted throughout the Standard Action all relate to Skiva's alleged unauthorized use of DESIGN 7766 in its advertising, marketing, distribution and sale of clothing products on the internet and elsewhere.

84. On November 10, 2015, Standard and the Defendants filed an Amended Joint Report Pursuant to FRCP Rule 26(f) and Local Rule 26-1 [the "Standard Rule 26(f) Report"].

85. In this case, the allegations contained in the Standard Rule 26(f) Report relate to Skiva's alleged unauthorized use of DESIGN 7766 in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere. A copy of the Standard Joint Rule 26(f) Report is attached hereto as **Exhibit H**.

86. Specifically, Section A lines 6-10 alleges the following:

A) Plaintiff has alleged that Defendants have engaged in infringing activity by creating, importing, manufacturing, distributing, purchasing, selling, offering for sale, **advertising**, **marketing**, creating derivative works, and/or transferring apparel and fabric which violates Plaintiff's copyrights in such proprietary textile design, entitled "7766."

87. On September 28, 2015, Standard filed its "First Set of Requests for Production of Documents to Skiva International" (the "Discovery Requests"). A copy of the Discovery Requests is attached hereto as **Exhibit I**.

88. Specifically, Production Request numbers 1, 24 and 25 ask for the following:

1. Exemplars of all versions of SUBJECT PRODUCT purchased, **marketed** or sold by YOU within the last five (5) years.

24. All DOCUMENTS which constitute, show or reflect the identity of YOUR employees or agents that were involved in **marketing**, selling, distributing, purchasing or shipping SUBJECT PRODUCT within the last five (5) years.

14

> 25. All DOCUMENTS which constitute, show, or reflect YOUR **advertising**, promotion or **marketing** of SUBJECT PRODUCT within the last five (5) years, including all catalogs, **advertisements**, price sheets, flyers and brochures depicting or referring to SUBJECT PRODUCT.

89. Without the support of its insurance carrier, Skiva was forced to settle the Standard case. On January 21, 2016, Standard and Skiva entered into a Settlement Agreement and General Release of Claims (the "Standard Settlement Agreement") which resulted in Skiva tendering a reasonable monetary amount to Standard as consideration for Standard releasing its claims against Skiva for copyright infringement in Skiva's advertising and marketing of clothing products.

90. In addition, the Standard Settlement Agreement also includes allegations related to Skiva's alleged unauthorized use of DESIGN 7766 in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

91. Due to confidentiality provisions, the contents of the Standard Settlement Agreement may not be disclosed prior to conduct discovery in the matter at hand.

92. With respect to a demand for monetary damages, the Standard Settlement Agreement speaks directly to the monetary damages suffered by Standard due to Skiva's unauthorized copyright infringement in its advertising, marketing, distribution, and sale of clothing products on the internet and elsewhere.

93. Thus, the Standard Settlement Agreement specifically mentions a monetary sum tendered by Skiva to Standard sustained as a consequence of Skiva's alleged infringing activities.

94. Due to the aforementioned evidence, there is no dispute that the factual allegations asserted against Skiva relate to the alleged unauthorized use of DESIGN 7766 in Skiva's advertising and marketing.

## COUNT I
## BREACH OF CONTRACT – ROYAL CASE

95. Skiva repeats and realleges all of the preceding paragraphs as if fully set forth herein.

96. This is a cause of action for breach of contract under New York law.

97. Pursuant to the terms of the CGL Policy at issue herein, The Hartford was obligated to at least defend and compensate Skiva for the claims of Royal that constitute "Advertising Injury."

98. One or more of the claims asserted prior to and in the respective Underlying Actions constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the Policy at issue.

99. Skiva made a proper demand for coverage, defense, and compensation.

100. Skiva submitted timely notice to The Hartford.

101. Despite several attempts, The Hartford improperly refused to cover, defend, and compensate Skiva in the Royal action.

102. As a result, The Hartford has breached the terms of the CGL insurance policies at issue herein.

103. As a result of The Hartford's breach, Skiva has suffered, and will continue to suffer, damages in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT II
## BREACH OF CONTRACT – UNICOLORS CASE

104. Skiva repeats and realleges all of the preceding paragraphs as if fully set forth herein.

105. This is a cause of action for breach of contract under New York law.

106. Pursuant to the terms of the CGL Policy at issue herein, The Hartford was obligated to at least defend and compensate Skiva for the claims of Unicolors that constitute "Advertising Injury."

107. One or more of the claims asserted prior to and in the respective Underlying Actions constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the Policy at issue.

108. Skiva made a proper demand for coverage, defense, and compensation.

109. Skiva submitted timely notice to The Hartford.

110. Despite several attempts, The Hartford improperly refused to cover, defend, and compensate Skiva in the Royal action.

111. As a result, The Hartford has breached the terms of the CGL insurance policies at issue herein.

112. As a result of The Hartford's breach, Skiva has suffered, and will continue to suffer, damages in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT III
## BREACH OF CONTRACT – MINX CASE

113. Skiva repeats and realleges all of the preceding paragraphs as if fully set forth herein.

114. This is a cause of action for breach of contract under New York law.

115. Pursuant to the terms of the CGL Policy at issue herein, The Hartford was obligated to at least defend and compensate Skiva for the claims of Minx that constitute "Advertising Injury."

116. One or more of the claims asserted prior to and in the respective Underlying Actions constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the Policy at issue.

117. Skiva made a proper demand for coverage, defense, and compensation.

118. Skiva submitted timely notice to The Hartford.

119. Despite several attempts, The Hartford improperly refused to cover, defend, and compensate Skiva in the Royal action.

120. As a result, The Hartford has breached the terms of the CGL insurance policies at issue herein.

121. As a result of The Hartford's breach, Skiva has suffered, and will continue to suffer, damages in an amount in excess of seventy-five thousand dollars ($75,000).

## COUNT IV
## BREACH OF CONTRACT – STANDARD CASE

122. Skiva repeats and realleges all of the preceding paragraphs as if fully set forth herein.

123. This is a cause of action for breach of contract under New York law.

124. Pursuant to the terms of the CGL Policy at issue herein, The Hartford was obligated to at least defend and compensate Skiva for the claims of Standard that constitute "Advertising Injury."

125. One or more of the claims asserted prior to and in the respective Underlying Actions constitute "Advertising Injury" under the definition of "Advertising Injury" contained in the Policy at issue.

126. Skiva made a proper demand for coverage, defense, and compensation.

127. Skiva submitted timely notice to The Hartford.

128. Despite several attempts, The Hartford improperly refused to cover, defend, and compensate Skiva in the Royal action.

129. As a result, The Hartford has breached the terms of the CGL insurance policies at issue herein.

130. As a result of The Hartford's breach, Skiva has suffered, and will continue to suffer, damages in an amount in excess of seventy-five thousand dollars ($75,000).

**WHEREFORE**, Skiva prays for judgment against The Hartford as follows:

A. With respect to each of Counts I through V, for damages in an amount to be proven at trial;

B. With respect to each of Counts I through V, for pre-judgment interest on all awards of damages; and

C. For such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                  Respectfully submitted,
**STERN & SCHURIN LLP**

By: _/s/ Steven Stern_____

Steven Stern (SS 5203)
  sstern@sternschurin.com
Richard Schurin (RS 0199)
  rschurin@sternschurin.com
Wayne M. Cox (WC 5661)
  wcox@sternschurin.com
595 Stewart Avenue, Suite 710
Garden City, NY 11530
Telephone: (516) 248-0300
Facsimile: (516) 283-0277

*Attorneys for Plaintiff*

Dated: May 31, 2016
       Garden City, New York